**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| SHAQUINTA WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>CLARK COUNTY SCHOOL DISTRICT,<br><br>Defendant. | Case No. 2:16-cv-02248-APG-PAL<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF No. 24) |

Plaintiff Shaquinta Williams worked on a probationary basis as a bus driver for defendant Clark County School District (CCSD). At the end of her probationary period, she was returned to her prior position as a bus aide. Williams sues, claiming she was subjected to sexual harassment and was retaliated against when she complained about it. She also claims white employees were treated more favorably. Williams asserts claims for sex harassment, retaliation, race discrimination, and interference with her rights under the Family Medical Leave Act (FMLA). CCSD moves for summary judgment on all claims. I grant the motion.

**I. BACKGROUND**

Williams started working for CCSD in 2006 as a bus aide. ECF No. 27-1 at 6. She was promoted to bus driver for the 2015-16 school year. *Id.* CCSD policy requires a support staff employee who is promoted to serve a six-month probation in her new position. ECF No. 24-1 at 2. If the employee does not pass probation, she is returned to her prior position. *Id.*

In September 2015, another bus driver complained about issues she was having with Williams. *Id.* at 2, 7-14. Williams denied she generally had issues with the other bus driver, but she admitted she made a comment about the other employee. *Id.* at 2, 16; ECF No. 24-2 at 3. Karen Johnson, an administrator in CCSD's transportation department, reminded Williams to be professional in her interactions with other employees. ECF No. 24-1 at 2, 16.

/ / / /

On October 9, 2015, Williams submitted a written statement asserting that a fellow bus driver, Theo Manning, was gossiping about the sexual behavior of an unidentified female bus driver. *Id.* at 3, 18. Williams also complained that Manning made comments to her about wanting to be more than friends and showed her a pornographic video clip on his phone. *Id.* at 3, 18-19. Williams saw the video for about three seconds before she looked away. ECF No. 24-2 at 4. According to Williams, Manning would make comments about the way she looked and he would undress her with his eyes. ECF No. 27-1 at 17-18. Additionally, Williams contended Manning falsely accused her of being in an accident and then harassed her about it. ECF No. 24-1 at 19-23.

After receiving Williams' complaint, CCSD employee Mark Johnson told Manning not to bother Williams and her sister, who also worked as a bus driver. ECF No. 27-1 at 19-20. Later that month, Jennifer Coleman, a transportation department administrator, issued a written directive to Manning ordering him to cease communicating with other employees about the recent allegations of harassment and advised him he was expected to behave professionally. *Id.* at 27. Coleman also told Williams and her sister to stay away from Manning. ECF Nos. 27-1 at 21; 27-3 at 61.

In December 2015, Manning complained that Williams and her sister were harassing him. ECF No. 24-1 at 3. Another bus driver separately reported that he heard Williams ask if "ugly" (referring to Manning) had touched her bus. *Id.* at 4, 33. In January 2016, Manning complained that Williams and her sister were still harassing him. *Id.* 24-1 at 4, 30-31.

In the meantime, Williams received her initial three-month performance evaluation, which she signed on January 11, 2016. ECF No. 27-6 at 26. Williams' overall performance was marked as meeting standards, although she was marked as needing improvement in the area of communications with co-workers. *Id.* In the comment sections, Williams was reminded to act professionally with fellow employees, students, and members of the community. *Id.*

Based on the reports in December and January that Williams and her sister were harassing Manning, Karen Johnson spoke to Williams on January 25. ECF No. 24-1 at 4, 35. During that conversation, Johnson asked if Manning had continued to harass Williams. *Id.* at 4, 35. Williams

responded that Manning had not done anything inappropriate since October. *Id.* at 4, 35; *see also* ECF No. 24-2 at 6 (Williams' deposition testimony that after showing her the video, Manning did not further sexually harass her). Johnson told Williams not to talk about Manning with anyone except her, and she reminded Williams that harassment was improper conduct and to act professionally. ECF No. 24-1 at 3, 35. Johnson also decided that because more than one employee had reported that Williams and her sister were engaging in harassing conduct, the sisters would be assigned to different work locations. *Id.* at 4, 35.

On January 27, Williams was in a minor accident while driving her bus. *Id.* at 4, 37. In her statement to the Las Vegas Metropolitan Police Department, Williams stated she was driving down Tropicana Avenue in the turn lane and was about to make a left turn when her "right bottom mirror hit the armoured [sic] truck." *Id.* at 38. A CCSD transportation investigator reviewed the incident. *Id.* at 4, 37. She determined that Williams was traveling eastbound on Tropicana when the bus's mirror made contact with a second vehicle, which fled the scene. *Id.* at 37. The investigator concluded the accident was preventable. *Id.* Approximately six weeks after the accident, Williams' sister wrote a statement that the accident was caused by the armored truck driver, but she did not give the statement to CCSD as part of the accident investigation. ECF No. 27-3 at 41, 56.

On February 16, Williams applied for intermittent FMLA leave based on stress and anxiety. ECF No. 27-5 at 13. That request was granted. *Id.* at 15.

On February 22, Williams received her six-month evaluation. ECF No. 27-6 at 28. This time, her overall performance was rated as requiring improvement. *Id.* She was marked as needing improvement in the areas of safety practices and compliance with rules, and work judgments. *Id.* In the comments section, the evaluation stated Williams "failed to make progress with the previously set goal of conducting herself in a professional manner," and it was noted that Williams "was involved in a preventable accident on January 27, 2016." *Id.*

Johnson tried to schedule meetings with Williams to discuss work issues, but Williams would state she was feeling stressed and could not continue to work, so no meeting was held.

ECF No. 24-1 at 4. Johnson decided that Williams had not passed probation, which meant Williams would be demoted from her position as a bus driver and returned to her prior position as a bus aide. *Id.* at 5, 40-41. According to Johnson, the decision was based on work performance issues and Williams' statements about her own stress level, given that bus driver is a safety sensitive position. *Id.* at 5, 40. On February 24, Johnson advised other members of the transportation department of this decision. *Id.* at 40. Williams was mailed a letter informing her of the decision on February 25, and she signed a form acknowledging the demotion on March 7. *Id.* at 41; ECF No. 27-1 at 134. The demotion resulted in a pay decrease. ECF No. 27-6 at 19.

In April 2016, Williams filed a charge with the Equal Employment Opportunity Commission (EEOC). ECF No. 24-2 at 17. Williams marked the boxes for race and sex discrimination and retaliation. *Id.* She based her complaint on Manning's conduct, which she described as occurring from August 2015 through December 2015, and on the fact that she was not allowed to work with family members but white employees were allowed to work with family members. *Id.* The EEOC issued a notice of right to sue in June 2016. *Id.* at 18.

In September 2016, a bus driver reported that Williams, who was the aide on her bus, was sleeping and using a cell phone while students were on the bus, in violation of CCSD policy. ECF No. 24-1 at 5, 43-47, 55. After the matter was investigated and video from the bus reviewed, Nathaniel Whitney, Bus Operations Coordinator, suspended Williams for ten days. ECF No. 24-1 at 5, 55. After an evidentiary hearing, the suspension decision was upheld. ECF No. 27-4 at 24.

## II. ANALYSIS

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a

genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

**A. Sexual Harassment**

In count one of the complaint, Williams alleges that Manning's conduct toward her constitutes sex harassment.[1] CCSD argues that Manning's conduct was not severe or pervasive, and even if it was, CCSD is not liable because once Williams complained, CCSD took action that stopped the harassment. Williams argues CCSD did not take action against Manning and instead told her to stop harassing Manning.

To establish a hostile work environment claim, Williams must show that (1) she "was subjected to verbal or physical conduct of a sexual nature," (2) "this conduct was unwelcome," and (3) the conduct was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Fuller v. Idaho Dep't of Corr.*, 865 F.3d 1154, 1161 (9th Cir. 2017) (quotation omitted). "The working environment must both subjectively and objectively be perceived as abusive, and the objective analysis is done from the perspective of a reasonable woman." *Id.* (quotation omitted).

Where the plaintiff alleges harassment by a co-worker, the employer is liable "only 'where its own negligence is a cause of the harassment.'" *Swenson v. Potter*, 271 F.3d 1184, 1191 (9th Cir. 2001) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759 (1998)). An employer may be liable if it "fails to take corrective action after learning of an employee's sexually harassing conduct, or takes inadequate action that emboldens the harasser to continue his misconduct . . . ." *Id.* at 1192. An employer "cannot be held liable for misconduct of which it is

---

[1] Williams brings her first three claims under both state and federal law. The parties do not analyze the claims separately under state and federal law because Nevada Revised Statutes § 613.330(1) is "almost identical to" 42 U.S.C. § 2000e-2(a)(1). *Apececche v. White Pine Cty.*, 615 P.2d 975, 977 (1980). Thus, I likewise will analyze the sexual harassment, retaliation, and race discrimination claims under federal law.

unaware." *Id.* Thus, the employer may be liable if it "knew or should have known about the conduct and failed to stop it." *Ellerth*, 524 U.S. at 759. "Notice of the sexually harassing conduct triggers an employer's duty to take prompt corrective action that is reasonably calculated to end the harassment." *Swenson*, 271 F.3d at 1192 (quotation omitted).

CCSD management first became aware of Manning's harassing conduct in October 2015 when Williams filed her written complaint. In response, Mark Johnson and Jennifer Coleman spoke to Manning and told him to stop harassing Williams or her sister and to behave professionally. By Williams' own testimony, Manning did not further engage in any harassing or inappropriate conduct towards her after October 2015. Consequently, CCSD is entitled to summary judgment on this claim because once it was advised of the harassment, it took actions that were reasonably calculated to stop the conduct and in fact successfully stopped it.

**B. Retaliation**

In count two of the complaint, Williams alleges she was demoted from bus driver to bus aide in retaliation for her complaints about Manning's harassment. CCSD argues Williams did not reasonably believe she was reporting a Title VII violation when she complained about Manning's behavior, so she did not engage in protected activity. Alternatively, CCSD argues that even if her complaint in October 2015 counts as protected activity, there is no evidence her demotion in March 2016 was causally connected to that complaint and Williams cannot show pretext. Williams responds that she was promoted at the start of the school year and was given a positive performance review in January 2016, but soon afterward she was admonished not to discuss the fact that Manning had sexually harassed her and shortly thereafter was given a negative performance review and demoted. Williams also contends CCSD's explanation for the demotion is unworthy of belief because she did not cause the accident with the armored truck.

To establish a prima facie case of retaliation, the plaintiff must show that (1) she "engaged in a protected activity," (2) she "was subsequently subjected to an adverse employment action," and (3) "a causal link exists between the two." *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011). "The causal link can be inferred from circumstantial evidence such as the employer's

knowledge of the protected activities and the proximity in time between the protected activity and the adverse action." *Id.* If the plaintiff establishes a prima facie case, then "the burden shifts to the defendant employer to offer evidence that the challenged action was taken for legitimate, non-discriminatory reasons." *Id.* If the employer meets that burden, then "the plaintiff must show that the defendant's explanation is merely a pretext for impermissible discrimination." *Id.*

"In some cases, temporal proximity can by itself constitute sufficient circumstantial evidence of retaliation for purposes of both the prima facie case and the showing of pretext." *Id.* at 937. Where a plaintiff relies on proximity alone to prove causation, the temporal proximity must be "very close." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (quotation omitted).

Assuming Williams has presented a prima facie case of retaliation, CCSD has offered non-discriminatory reasons for her demotion. Several employees made complaints about Williams, Williams was involved in an accident, and Williams stated she was too stressed to drive, which is a concern in a safety-sensitive position like driving a school bus.

Williams relies on temporal proximity and her claim that she did not cause the accident to argue CCSD's reasons are pretextual. However, Williams made her complaint in October 2015 and was not demoted until February 2016. In between her complaint and her demotion, Manning did not harass her again and she did not complain again about harassment. To the contrary, when asked in January 2016 whether Manning had been harassing her, Williams said he had not. In the meantime, several complaints were filed about Williams' conduct, she was involved in what an investigator determined was a preventable accident, and she made statements that she was too stressed to drive the bus.

Further, while Williams contends she did not cause the accident, her own statement at the time of the accident suggests she did and the investigator found the accident was preventable. There is no evidence the investigator was aware of Williams' complaint about sex harassment or had any reason to retaliate against Williams. To the extent Williams relies on her sister's

/ / / /

statement that the armored truck caused the accident, there is no evidence that statement was provided to the investigator or CCSD management prior to the time Williams was demoted.

In sum, Williams has not raised a genuine dispute that a causal link existed between her complaint in October 2015 and her demotion in March 2016. I therefore grant CCSD's motion for summary judgment on Williams' retaliation claim.

**C. Race Discrimination**

In counts three and four, Williams alleges she was treated differently than her Caucasian co-workers.[2] CCSD contends Williams cannot establish a prima facie case of race discrimination because she has no evidence that similarly situated employees outside her protected class were treated differently. CCSD also argues it had non-discriminatory reasons for demoting and suspending Williams given her performance issues and Williams cannot show pretext. Williams responds that she was treated differently as an African-American employee because (1) she was suspended for using her cell phone on the bus but white employees were not, (2) Manning was allowed to sexually harass her but was fired after he sexually harassed a white employee, and (3) she was prohibited from working at the same location as her sister but white employees were allowed to work with family members.[3]

To determine whether Williams' race discrimination claim should survive summary judgment, I apply the "familiar burden-shifting scheme" set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 658 (9th Cir. 2002), *as amended* (July 18, 2002). Under *McDonnell Douglas*, Williams "must first establish a prima facie case of racial discrimination" by showing: "(1) [she] belongs to a protected class, (2) [she] was qualified for the position, (3) [she] was subjected to an adverse employment action, and (4) similarly situated . . . individuals [outside her protected class] were treated more favorably." *Id.*

---

[2] The same legal principles apply to Williams' race discrimination claims under Title VII (count three) and 42 U.S.C. § 1981 (count four). *Manatt v. Bank of Am., NA*, 339 F.3d 792, 797 (9th Cir. 2003).

[3] Williams specifically disclaims that she is asserting her demotion was due to race discrimination. ECF No. 27 at 19.

If Williams establishes a prima facie case, the burden of production shifts to CCSD to "articulate a legitimate, nondiscriminatory reason" for its conduct. *Id.* If CCSD meets this burden, then Williams "must demonstrate that [CCSD's] articulated reason is a pretext for unlawful discrimination." *Id.* She may meet this burden by "either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 658-59 (quotation omitted). Williams must offer "specific and substantial" evidence to overcome CCSD's legitimate reasons. *Id.* at 659 (emphasis omitted).

If Williams raises a genuine issue as to pretext, "then the burden-shifting framework disappears," and the remaining issue is whether discrimination occurred. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142-43 (2000). Even though the burden of production shifts at the second stage of the *McDonnell Douglas* analysis, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

### 1. October 2016 Suspension

Williams cannot assert a claim related to her suspension because she did not exhaust her administrative remedies relative to that claim. "Before filing a Title VII claim, a plaintiff must exhaust [her] administrative remedies." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002), *as amended* (Feb. 20, 2002). If a plaintiff does not file a timely administrative charge, or if her complaint alleges wrongdoing that falls outside of the charging document or the EEOC's investigation, then the plaintiff failed to exhaust her administrative remedies. *Id.* at 1099-1100 (discussing scope); *Laquaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172, 1174 (9th Cir. 1999) (discussing timing). Williams did not file an EEOC complaint related to her suspension. Her suspension six months after her demotion by a different supervisor in a different position for different alleged misconduct falls outside her prior charge or any investigation that reasonably could have been expected to come out of that charge. She therefore has not exhausted her

/ / / /

remedies in relation to any claim arising out of her suspension, and I grant CCSD's motion for summary judgment on this aspect of Williams' race discrimination claim.

### 2. Sexual Harassment

Williams did not file an EEOC complaint claiming race discrimination based on the differences in the way she was treated versus white employees who were allegedly harassed. She therefore has not exhausted this claim.

In addition, Williams has not presented evidence raising a genuine dispute that others outside her protected class were treated differently. Although Williams contends Manning was fired for harassing a white employee, Karen Johnson, her evidence is based on second-hand hearsay and workplace rumors. *See* ECF No. 27-1 at 97-98, 113. CCSD has presented evidence that Manning was suspended for using his cell phone on the bus and thereafter resigned. ECF No. 28-1 at 19, 21. Johnson denies under oath that Manning harassed her or that she claimed he harassed her. *Id.* at 19. Williams therefore has not presented evidence raising a genuine dispute that CCSD treated her differently on account of her race, and I grant CCSD's motion for summary judgment on this aspect of Williams' race discrimination claim.

### 3. Working with Family Members

Williams has not shown that she was treated differently than similarly situated employees outside her protected class when she was prohibited from working at the same location as her sister. Williams has not presented evidence that employees outside her protected class were allowed to work with family members after they had been accused of harassing other employees like Williams and her sister had been. Consequently, I grant CCSD's motion for summary judgment on this aspect of Williams' race discrimination claim.

### D. FMLA

In count five, Williams alleges that shortly after she started taking intermittent FMLA leave, she was demoted and her work hours were reduced. CCSD argues it had reasons unrelated to Williams' leave request to demote her and there is no evidence that taking FMLA leave played a role in the demotion decision. Williams responds that she was given a positive performance

evaluation before her FMLA request, but given a negative evaluation and a demotion shortly after requesting FMLA leave.[4]

Title 29 U.S.C. § 2615(a)(2) prohibits "discriminat[ion] against any individual for opposing any practice made unlawful" by the FMLA. Section 2615(b) "prohibits discrimination against any individual for instituting or participating in FMLA proceedings or inquiries." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001). The FMLA's anti-discrimination and anti-retaliation provisions do "not cover visiting negative consequences on an employee simply because he has used FMLA leave. Such action is, instead, covered under § 2615(a)(1), the provision governing" interference with the exercise of FMLA rights. *Id.*

Section 2615(a)(1) makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA. An employer "cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." *Bachelder*, 259 F.3d at 1122 (emphasis omitted) (quoting 29 C.F.R. § 825.220(c)). To show interference with FMLA rights, Williams must show, through direct or circumstantial evidence, that her "taking of FMLA-protected leave constituted a negative factor in the decision" to demote her. *Id.* at 1125.

Proximity may be circumstantial evidence that the leave request was a negative factor in the decision to demote. *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1137 (9th Cir. 2003). But proximity must be considered in factual context. *Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003). An employer does not violate the FMLA by terminating an employee for performance problems so long as the FMLA leave was not also a negative factor in the decision. *Liston v. Nev. ex rel. its Dep't of Bus. & Indus.*, 311 F. App'x 1000, 1002 (9th Cir. 2009). An employee cannot insulate herself from the consequences of her own performance failures by requesting and taking FMLA leave.

Williams' reliance on the difference between her first and second performance evaluations

---

[4] CCSD also argues that Williams relies on being told by someone who does not work for CCSD that she was demoted due to absences, but she admitted no CCSD employee told her this was the reason for her demotion. Williams' opposition does not rely on this evidence in support of her FMLA claim.

is misplaced. Her first evaluation was for her first three months of employment. Her second evaluation was for her entire six-month probationary period. In between the two evaluations, Williams was counseled about her behavior and was involved in what was determined to be a preventable accident. Although Williams disputes she harassed Manning, she does not dispute that Manning and another employee made complaints about her conduct. Those complaints, and the counseling session related to them, both occurred before Williams applied for FMLA leave and thus could not be pretext for FMLA interference. Additionally, although she now claims she did not cause the accident, she does not dispute that the investigator found the accident was preventable. The investigator made this determination before Williams applied for FMLA leave and thus there is no basis to conclude it was in any way related to her FMLA leave. And she presents no evidence that she told anyone at CCSD that she did not cause the accident or that she provided her sister's belated account of the accident to anyone at CCSD prior to her demotion.

Other than proximity in time, Williams points to no facts that would allow a reasonable jury to conclude her failure to pass probationary status was causally linked to her FMLA leave. Under these facts, proximity between the request for FMLA leave and the demotion is not sufficient to raise a genuine dispute that Williams' request for FMLA was a negative factor in the decision. I therefore grant CCSD's motion for summary judgment on Williams' FMLA claim.[5]

**E. Sealing**

The parties have filed exhibits which contain private information, such as Williams' social security number, without redacting the information or by inadequately redacting it so that the information is still visible. I therefore direct the clerk of court to seal ECF Nos. 24-1, 27-5, 27-6. *See* LR IC 6-1 (directing parties to refrain from including without redaction personal identifiers, including social security numbers, dates of birth, and home addresses). The parties shall file

---

[5] CCSD raises for the first time in its reply the argument that there is no evidence that Karen Johnson, who made the decision to demote Williams, knew about Williams' FMLA request before deciding to demote her. ECF No. 28 at 18-19. I generally do not consider arguments raised for the first time in a reply brief. *See Vazquez v. Rackauckas*, 734 F.3d 1025, 1054 (9th Cir. 2013). CCSD could have raised this argument in its motion but did not, so Williams has not had an opportunity to respond to it.

properly redacted, publicly accessible versions of those documents within 14 days of the date of this order.

### III.  CONCLUSION

IT IS THEREFORE ORDERED that defendant Clark County School District's motion for summary judgment **(ECF No. 24) is GRANTED**.  The clerk of court is instructed to enter judgment in favor of defendant Clark County School District and against plaintiff Shaquinta Williams.

IT IS FURTHER ORDERED that the clerk of court shall seal ECF Nos. 24-1, 27-5, 27-6. Within 14 days of entry of this order, the parties shall file properly redacted, publicly accessible versions of these documents

DATED this 4th day of April, 2018.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE